Slip Op. 07-70

# UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————— :

MIGUEL A. DELGADO,                      :
                                        :
                    Plaintiff,          :
                                        :   **Before: MUSGRAVE, Judge**
            v.                          :
                                        :   **Court No. 06-00030**
UNITED STATES,                          :
                                        :
                    Defendant.          :
—————————————————————— :

### MEMORANDUM OPINION AND ORDER

[Plaintiff alleged inadequate notification of agency decision. The court found that agency action might not be proper because statute provided that a "written determination" was to be "issued" at the conclusion of the administrative process and it was not clear whether the agency had done so. Matter remanded for further proceedings.]

Dated: May 11, 2007

The Mooney Law Firm (*Neil B. Mooney*) for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Barbara S. Williams*, Attorney In Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice (*Marcella Powell*); *Ilena Pattie*, Office of the Associate Chief Counsel, United States Customs and Border Protection, of counsel, for the defendant.

By his complaint Miguel A. Delgado ("Delgado") alleges that United States Customs and

Border Protection[1] ("Customs" or "CBP") improperly determined that his customhouse brokers

license ("License") should be revoked. Delgado raises four main issues in support of his position,

arguing that: (1) the Administrative Law Judge ("ALJ") who presided at the administrative hearing

---

[1]        This agency's name was officially changed effective March 31, 2007. *See* Name Change From the Bureau of Immigration and Customs Enforcement to U.S. Immigration and Customs Enforcement, and the Bureau of Customs and Border Protection to U.S. Customs and Border Protection, 72 Fed. Reg. 20,131 (Dep't Homeland Security, Apr. 17, 2007).

("Hearing") improperly applied the doctrine of *collateral estoppel*; (2) the ALJ's determination that

it was proper to revoke Delgado's License because Delgado violated a Customs statute or regulation

by making false or misleading statements was in error; (3) the ALJ's determination that it was proper

to revoke Delgado's License because Delgado was convicted of a felony that was based on either:

(a) the importation or exportation of merchandise or (b) the conduct of Delgado's customs business

was in error; and (4) that the letter informing Delgado that his License was being revoked

insufficiently notified him of the facts and reasons underlying Customs's determination.[2]

## Background

On September 26, 1989, Delgado was issued customhouse brokers license 11634.  Compl.

at para. 2.  In 1990, Delgado formed a corporation, Lancer International ("Lancer"), which he ran

for approximately ten years.  Tr. at 161.

Some time prior to May 1997, questions were raised about certain shipments of merchandise

handled by Lancer.  *See United States v. Delgado*, 321 F.3d 1338, 1341 (11th Cir. 2003)

("*Delgado*").  Specifically, Customs inspectors found that shipments arriving in Port Everglades,

Florida that were described as containing "foodstuffs," contained both foodstuffs and liquor.  *See*

tr. at 116.  Because of this seeming irregularity, Customs and the Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") initiated an investigation.  Tr. at 116–17.

On August 24, 2000, at the conclusion of the investigation, Delgado was indicted by a federal

grand jury in the Southern District of Florida on twenty-nine felony counts of being a co-conspirator

in a scheme to introduce liquor into United States commerce without the payment of excise taxes

---

[2]       Delgado also requests the award of attorney fees and costs pursuant to the Equal
Access to Justice Act.  *See* compl. paras. 45–46 (citing 28 U.S.C. § 2412(d)(1)(A)).

thereon.  *See United States of America v. Deepak Kumar et al.*, Ct. No. 00-0682 (Aug. 24, 2000),

R. at 173 (citing 26 U.S.C. §§ 5601(a)(11), (12), 5608(b); 18 U.S.C. §§ 2, 371).  In early 2001,

Delgado was tried by a jury and convicted of twenty-eight of the twenty-nine counts.  *See United*

*States v. Miguel Delgado*, Ct. No. 00-0682, (Sept. 6, 2001), R. at 165 ("Judgment").  At trial it was

affirmatively established that Delgado was aware of, and participated in, the conspiracy.  Tr. at

252–53; Judgment, Count One, R. at 165 (citing 18 U.S.C. § 371), *Delgado*, 321 F.3d at 1346

("Contrary to what Delgado claims, the jury had sufficient evidence to find him guilty of the

conspiracy.").  At no point was Delgado accused, indicted, or convicted of violating any law or

regulation enforced by Customs[3].  In September, Delgado was sentenced to twenty-seven months in

prison and ordered to pay restitution.  Judgment, R. at 168–69, 171.  Delgado timely appealed the

trial Court's decision.  *See Delgado*, 321 F.3d at 1343.  After his release, Delgado resumed actively

working in the customs field with the knowledge and oversight of the District Court.  Tr. at 215; *see*

*also* Letter from United States District Court / District of Southern Florida / Probation Office of

6/18/04, R. at 113.

On August 28, 2002, the Acting Port Director for the Miami Service Port sent a memo to the

Associate Chief Counsel recommending that Delgado's License be revoked.  *See* Recommendation

for Revocation of Customhouse Broker Miguel A. Delgado's License, R. at 267.  The memo stated

that "[t]he proposal for revocation of this license (for cause) is under consideration in accordance

with 19 CFR 111.53 (b)(1).  As per guidelines provided by the Office of Field Operations, your

review and recommendation are requested."  *Id.*

---

[3]       This is possibly so because at some point prior to Delgado's indictment Customs
dropped out of the investigation.  *See* tr. at 117.

Some time in late 2002 or early 2003, Delgado filed his "Triennial Status Report" with Customs. *See* R. at 272.  In this document, Delgado responded in the affirmative to a question requesting whether he had "engaged in any conduct that could constitute grounds for suspension or revocation under Title 111.53? [sic] (i.e. convicted of a felony)." *Id.*

On February 20, 2003, the Court of Appeals for the 11th Circuit issued its opinion on Delgado's appeal. *See Delgado*, 321 F.3d 1338.  The appellate Court affirmed Delgado's conviction on all twenty-eight counts and the trial Court's "decision in all respects." *Id.* at 1349.

Some time in mid-2003, "concerns" were raised about Delgado's continuing active involvement in the customs field. *See* Informed Compliance Contact Sheet ("Contact Sheet") #1 of 3/24/04, R. at 240; Contact Sheet #2 of 3/24/04, *id.* at 241[4].  Contact Sheet #1 memorialized that, "on or about August 2003," an unidentified broker approached Customs and inquired as to why it would "allow a person to operate as a broker after being convicted." R. at 240.  The unidentified broker complained that Delgado "was pulling clients he had under his old filer code . . . [and the unidentified broker] wanted to know if Customs was doing anything about this matter." *Id.*  Contact Sheet #2 memorialized that, on September 30, 2003, an unidentified broker[5] spoke to a Customs representative "about his and the trade's concern that Miguel Delgado, having been convicted and arrested was still allowed to operate as a broker.  [The unidentified broker] was concerned that Customs would allow [a broker] to continue to operate in this type of situation." R. at 241.

------

[4]      It is not clear why these "records" were not filed contemporaneously with the events they purport to describe.  Indeed, they were apparently generated several weeks *after* Customs set into motion the process to revoke Delgado's License.

[5]      Due to redactions, it is unclear whether the second broker is the same person as the first broker.

On March 9, the Port Director for the Miami Service Port sent Delgado a "Notice and Statement of Charges." *See* R. at 153 ("Statement of Charges"). The Statement of Charges informed Delgado that his License might be revoked pursuant to 19 C.F.R. §§ 111.53(c) & 111.32 (violating Customs law or regulation by filing false documentation), 19 C.F.R. § 111.53(b) (convicted of a felony either involving importation or exportation of merchandise or "arising out of" customs business), or 19 C.F.R. § 111.53(d) (aiding and abetting violation of Customs law). *Id.* at 153–54[6]. In addition, the Statement of Charges informed Delgado that 5 U.S.C. §§ 554 and 558 "are applicable to formal proceedings," that he could be represented by counsel, and that the Hearing would be held on May 18, 2004. *Id.* at 159, 161; *see also* Order of 3/3/04, R. at 145, 147.

On, May 18, the Hearing was held in Miami. *See generally*, Tr. of Proceedings, Vols. I & II. At the Hearing, the ALJ took testimony from various Customs and ATF officials, and several other people who testified as to Delgado's good character. *See generally* Transcripts.

On December 17, the ALJ issued the recommendation as to the revocation of Delgado's License. *See* Recommended Decision and Order, R. at 18 ("Recommended Decision"). This document recited the various elements relevant to the ALJ's determination. In summary, the ALJ stated that:

> IT IS HELD that by a preponderance of the evidence contained in the record of this hearing supports license revocation as a matter of law.

---

[6]     While it is not clear to which year's regulations the Statement of Charges refers, the court notes that the regulations relevant to this discussion were last revised 2000. *See* Rules and Regulations, 65 Fed. Reg. 13,880, 13,898–94 (Dep't Treas. Mar. 15, 2000) (final rule). Since that time, the regulation's language has remained unchanged. *Compare* 19 C.F.R. §§ 111.32, .53–.81 (2000) *with* 19 C.F.R. §§ 111.32, .53–.81 (2007)

> IT IS RECOMMENDED that the facts warranting revocation be seriously reconsidered in light of the circumstances of Miguel A. Delgado being permitted by a United States District Court to continue in a licensed Customs business, and in further light of the good character testimony . . . , and the fact that there were no violations of the fiduciary duty of accounting owed by Mr. Delgado to customer-importers, and no customer was injured.

Recommended Dec., R. at 34.  On May 31, 2004, the Recommended Decision and a certified copy of the Hearing record were sent to the Department of Homeland Security ("DHS").  *See* Certification of Record, R. at 9, 13.

On August 2, 2005, the Acting Director of Cargo and Transportation Policy, Office of Planning and Policy, Border and Transportation Security Directorate ("BTS") sent a memorandum to the Acting Assistant Secretary for Policy and Planning, BTS ("Acting Assistant Secretary").  *See* R. at 3 ("Decision Memorandum").  The Decision Memorandum requested that the Acting Assistant Secretary affirm revocation of Delgado's License.  *See id.*  On that same day, the Acting Assistant Secretary sent a letter to the Commissioner of CBP.  *See*, R. at 1 ("Action Letter").  In the Action Letter, the Acting Assistant Secretary notified the Commissioner of CBP that BTS was affirming "CBP's revocation of Mr. Delgado's license."  R. at 2.  The letter requested the Commissioner "ensure that CBP takes the appropriate steps to inform Mr. Delgado of this decision pursuant to 19 CFR 111.74."  R. at 2.

On December 3, the Assistant Commissioner of the Office of Field Operations for CBP sent Delgado formal notification that his License was being revoked.  *See* compl. ex. A ("Notification Letter").  The Notification Letter stated, in relevant part, that "[y]ou are hereby notified that the U.S. Department of Homeland Security has affirmed U.S. Customs and Border Protection's (CBP) decision to revoke your Customshouse brokers license."  *Id.*

Thereafter, on January 27, 2006, Delgado commenced this action.

### Jurisdiction and Standard of Review

Customs has the authority to initiate a proceeding to suspend or revoke a customhouse brokers license pursuant to 19 U.S.C. § 1641(d)(2)(B) (2000). This Court has exclusive jurisdiction to review a determination to revoke a customhouse brokers license pursuant to 28 U.S.C. § 1581(g)(2) (2000). *See Shiepe v. United States*, 23 CIT 66, 72, 36 F. Supp. 2d, 402, 408 (1999) (citing 28 U.S.C. § 1581(g)(2) (1988)). The scope of the Court's review of such a proceeding is set out in 28 U.S.C. § 2640(a)(5) (2000), which provides for "Civil actions commenced to review any decision of the Secretary of the Treasury under section [1641], with the exception of decisions under section [1641(d)(2)(B)], which shall be governed by subdivision (d) of this section." The court pauses here.

As originally enacted, "subdivision (d)" read as follows: "In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(d) (1976 Supp. V). In other words, the statute directly tied this Court's review of determinations made by the Secretary of Treasury to provisions of Title 5—the Administrative Procedure Act ("APA"). In 1987, 19 U.S.C. § 1641 and 28 U.S.C. § 2640 were greatly revised. First, in section 1641, Congress added language defining the term "customs business." *See* 19 U.S.C. § 1641(a)(2) (1982 Supp. V). Next, Congress outlined the specific types of disciplinary procedures Customs could initiate against customs brokers, including the imposition of monetary penalties (19 U.S.C. § 1641(d)(2)(A)), and the suspension or revocation of licenses (19 U.S.C. § 1641(d)(2)(B)). In addition to these changes, the "scope and standard of review" for this Court's review of matters concerning Customs's disciplinary procedures was revised. *See* 28 U.S.C.

§ 2640(a)(5) (1982 Supp. V).   Specifically, this subdivision was modified to provide that

determinations made by the Agency were to be reviewed on the record made before the Court "with

the exception of decisions under section [1641(d)(2)(B)], which shall be governed by subdivision

(d) of this section."  *Id*.  At that time, "subdivision (d)" continued to firmly point to the APA.  *See*

*id.*; *see also Shiepe*, 23 CIT at 72, 36 F. Supp. 2d at 408 (citing 28 U.S.C. §§ 2640(a)(5), (d) (1988)).

In 1993, 28 U.S.C. § 2640(a) was again amended.  At that time, Congress re-wrote the statute

thusly:

> (4) Section 2640 is amended—
>
> > (A) by redesignating subsection (d) as subsection (e);
> >
> > and
> >
> > (B) by inserting after subsection (c) the following new subsection:
> >
> > > "(d) In any civil action commenced to review any order or decision of the Customs Service under section 499(b) of the Tariff Act of 1930, the court shall review the action on the basis of the record before the Customs Service at the time of issuing such decision or order.". [sic]

P.L. 103-182 Sec. 684 (a)(4), 107 Stat. 2219; *see* 28 U.S.C. § 2640(d) (1988 Supp. V).  As stated

in the legislative history:

> Section 684 amends 28 U.S.C. 2640 to provide that in any civil action commenced to review an order or decision by Customs with respect to the denial, suspension or revocation of the accreditation of a private laboratory, the court shall review the action on the basis of the record before Customs at the time of issuing such decision or order.

North Am. Free Trade Agreement and Implementation Act, 1993 U.S.C.A.A.N. 2552, 2707.  In other words, Congress provided a new scope of review for  determinations made by the Secretary of Treasury related to the accreditation of private laboratories in "new" subdivision 2640(d), and moved the "residual" APA scope of review to "new" subdivision 2640(e).  *See* 28 U.S.C. §§ 2640(d), (e) (1988 Supp. V).  No other part of section 2640 was modified—including subdivision (a)(5), which continued to provide that "decisions under section [1641(d)(2)(B)] . . . shall be governed by subdivision (d) of this section."  28 U.S.C. § 2640(a)(5) (1988 Supp. V).  The upshot of this Congressional legerdemain is that now, instead of the statute firmly basing this Court's scope of review for actions initiated under 19 U.S.C. 1641(d)(2)(B) on the APA, this Court is directed that the scope of its review is informed by reference to the "denial, suspension or revocation of the accreditations of a private laboratory."  *See* 28 U.S.C. § 2640(d), (e) (2006).  In revising the statute thusly, Congress has created a patent statutory absurdity.  Specifically, the statute now mandates that the scope of this Court's review of a determination to suspend or revoke a customhouse brokers license is to be based on the record made before Customs in a proceeding to suspend or revoke the accreditation of a private laboratory.  This court has stated that, "[w]hen the literal words of a statute create an absurd result, such a literal interpretation must be rejected."  *Koyo Corp. of U.S.A. v. United States*, 29 CIT __, __, 403 F. Supp. 2d 1305, 1310 (2005) (citing  *Holy Trinity Church v. United States*, 143 U.S. 457, 460 (1892)).  Here, because a literal reading of the statute creates an absurd result, the court, therefore, rejects the plain meaning of the statute and finds that subdivision (e) sets out the proper scope of review for this action.  *see Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005) (citing 5 U.S.C. § 706 when reviewing denial of a customhouse brokers license).  This being so, the APA provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall— . . .
>
>> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>>
>>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

5 U.S.C. § 706.  Furthermore, when reviewing Customs's determinations to revoke a customhouse brokers license, "[t]he findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive."  19 U.S.C. § 1641(e)(3).  *See UPS Customhouse Brokerage, Inc. v. United States*, 30 CIT __, __, 442 F. Supp. 2d 1290, 1304 (2006).  Finally, the Court may not consider arguments that were not raised before the agency, unless reasonable grounds existed for failing to do so.  *See* 19 U.S.C. § 1641(e)(2).

    While Delgado raises several arguments in support of his case, the court begins its analysis by reviewing whether Customs's administrative procedures were proper.  Specifically, the court must address Delgado's claim that the Notification Letter did not sufficiently apprise him of Customs's final decision in this matter.

### Discussion

    By statute, it is provided, in relevant part, that: "Following the conclusion of the hearing, the hearing officer shall transmit promptly the record of the hearing along with the findings of fact and recommendations to the Secretary for decision.  The Secretary will issue a written decision, based

solely on the record, setting forth the findings of fact and the reasons for the decision." 19 U.S.C.

§ 1641(d)(2)(b). Furthermore, regulations provide, in relevant part:

> If the Secretary of the Treasury, in the exercise of his discretion and based solely on the record, issues an order suspending a broker's license or permit for a specified period of time or revoking a broker's license or permit . . . the Assistant Commissioner will promptly provide written notification of the order to the broker . . . .

19 C.F.R. § 111.74. Thus, the process contemplates the following: (1) that the "hearing officer" will,

at the conclusion of a hearing, send the record of that hearing and a recommended decision to the

Assistant Commissioner; (2) those materials will be reviewed, culminating in the issuance of a

written decision that sets out the findings of fact and reasons for the decision; and finally, (3) notice

that the customhouse brokers license has been revoked will be sent to a broker. Here, the Record

shows the following. First, the ALJ, at the conclusion of the Hearing, submitted the Recommended

Decision and record of the proceeding to the DHS Office of General Counsel. *See* Certification of

Record, R. at 13. Second, a component of DHS (the BHS) reviewed the record and the

Recommended Decision. *See, generally*, Dec. Memo., R. at 3. In the Decision Memorandum, BTS

explained that revocation of Delgado's License was warranted and set out the facts and reasoning

underlying that determination. *Id*. The Decision Memorandum stated that the Agency took into

consideration the good character evidence attested to at the Hearing and explained that revocation

was still warranted because "[t]hese facts do not negate the actuality that [Delgado] was convicted

on 28 felony counts that involved importation or exportation of liquor, and that arose out of the

conduct of his Customs business, and the attendant harm to the public that Congress has found in

making such conduct criminal." *Id*. at 5. BTS then sent a letter to the Assistant Secretary. *See*

Action Letter, R. at 1. In this document, BTS summarized its determination, stated that it was

affirming revocation of Delgado's License, and requested that "CBP takes the appropriate steps to inform Mr. Delgado of this decision pursuant to 19 CFR 111.74." R. at 7. Finally, DHS sent Delgado the Notification Letter. In this letter DHS stated that "[y]ou are hereby notified that the U.S. Department of Homeland Security has affirmed U.S. Customs and Border Protection's (CBP) decision to revoke your Customshouse brokers license." Notification Letter.

Delgado contends that the Notification Letter "fails to address either the factual basis or the reasoning underlying the determination of the Department of Homeland Security and the CBP to revoke Delgado's Customs broker license. Agency action will only be upheld on [the] basis articulated by [the] agency." Mem. in Supp. of Pl.'s Rule 56.1 (a) Mot. for J. on the Agency R. ("Pl.'s Mem.") at 5 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)). Delgado argues that, here, the Notification Letter was inadequate because he only "received a letter containing one sentence declaring revocation of his License without a reason provided, and two sentences mentioning the right to appeal." *Id*. at 5 (citing Notification Letter). Customs argues that 19 C.F.R. § 111.74

> requires only that the Assistant Commissioner notify the broker that the license has been revoked. This is exactly what was stated in the revocation letter that Mr. Delgado received from CBP. Furthermore, Mr. Delgado was always aware of the reasons underlying CBP's decision to revoke his license. Indeed, Mr. Delgado received a Notice and Statement of Charges, which specified the relevant regulatory provisions and factual bases upon which CBP sought to revoke his license.

Def.'s Mem. at 7–8 (citing Statement of Charges, R. at 153). In response, Delgado contends that the Notification Letter

> contains no reason whatsoever for the revocation, and does not address new issues arising at the hearing. It does not explain how

> violating ATF rules amounts to violations of CBP regulations, does
> not explain why DHS/CBP ignored Judge Sippel's recommendation
> to "seriously reconsider" revocation, does not state why a monetary
> penalty or license suspension was inadequate — it does not explain
> a thing.

Pl.'s Reply at 6 (Notification Letter).  For the following reasons the court allows that the Agency's

procedure may not be proper in this respect.

As an initial matter, a review of the Notification Letter shows that it does not, as pointed out

by Delgado, contain any factual findings or reasoning that support Customs's determination to

revoke Delgado's License.  As argued by defendant, however, there is nothing in the regulations that

require any such notification to include a full recitation of Customs's reasoning.  The question

becomes, then, whether Delgado should have been somehow apprised of the underpinnings of

Customs's determination.  As noted above, by statute Customs must "issue a written decision, based

solely on the record, setting forth the findings of fact and the reasons for the decision."  19 U.S.C.

§ 1641(d)(2)(B).  Here, the court understands that Delgado was not issued a document that contained

Customs's reasoning (for example, the Action Letter, the Decision Memorandum, or some other

"written decision").  The court considers this to be a plausible scenario as the Action Letter and

Decision Memorandum appear to be internal agency memoranda, *see* R. at 1, 3, and there is no other

document on the Record that could otherwise be construed as being a "written decision" that was

issued to Delgado.  If Delgado did not receive notice of the facts and reasoning underlying

Customs's final determination, the question, then, is whether Customs has fully complied with its

statutory mandate, and the court cannot find, at this time, that it has.  This is so because, assuming

that the Action Letter and the Decision Memorandum fulfill in principle the functions of the "order"

and "written decision," it would seem that Customs must "issue" one or both of these documents (or

some other "written decision") to an affected party—and here that was not done.  Conversely, if it

is Customs's position that the statute does not require it to "issue" a "written decision" to an affected

party, it nowhere explains why it was not necessary to do so.[7]  Thus, the court must remand this

matter so that Customs may explain this process further.

### Conclusion

This matter is remanded so that defendant may file a report with the court indicating whether

either: (1) pursuant to 19 U.S.C. § 1641(d)(2)(B), Delgado should have been issued a written

decision that contained the facts and reasoning for revoking his License; or (2) why the statute does

not mandate that Customs issue Delgado such a document.  Defendant shall file this report by May

25, 2007.  If Customs determines that Delgado should have been issued a written decision, it shall

issue one to him by May 25, 2007, and Delgado may file a brief addressing that written decision by

May June 15, 2007; defendant may file a response to any such brief by June 29, 2007; Delgado may

reply to any such response by July 13, 2007.  If Customs determines that it need not issue a written

determination to Delgado, Delgado may submit a brief addressing that issue by June 15, 2007;

---

[7]     Fundamental principles of fairness would seem to dictate that a broker *must* be
provided with such information.  Defendant's position that Delgado was "always aware of the
reasons underlying CBP's decision to revoke his license" at the time Delgado initiated this action
rings hollow because Customs's determinations after the Hearing were not based solely on the facts
that formed the basis of the Statement of Charges.  Indeed, Customs's determinations after the
Hearing took into account a broader range of issues, including the conspiracy, Delgado's actions
after the conspiracy, and the good character testimony attested to at the Hearing.

Court No. 06-00030                                                          Page 15

defendant may respond to any such brief by June 29, 2007; Delgado may reply to any such response

by July 13, 2007.  All filings shall not exceed five pages in length.

      **SO ORDERED**


              /s/ R. Kenton Musgrave
              R. KENTON MUSGRAVE, JUDGE

Dated: May 11, 2007
      New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____

Deputy Clerk