Slip Op. 07 - 177

# UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————————
                                          :

MIGUEL A. DELGADO,           :
                                         :
              Plaintiff,        :
                                         :
             v.                  :     Before: **MUSGRAVE, Senior Judge**
                                       :     Court No. 06-00030
                                       :
UNITED STATES,             :
                                         :
             Defendant.     :
———————————————————————————:

## MEMORANDUM OPINION AND ORDER

[Plaintiff's motion for judgment on the record denied. The Secretary's decision is remanded to the Department of Homeland Security for further consideration .]

Dated: December 11, 2007

*The Mooney Law Firm* (*Neil B. Mooney*) for the plaintiff.

*Jeffrey S. Bucholtz*, Assistant Attorney General; *Barbara S. Williams*, Attorney In Charge, International Trade Field Office, Commercial Litigation Branch, United States Department of Justice (*Marcella Powell*); *Ilena Pattie*, Office of the Associate Chief Counsel, United States Customs and Border Protection, of counsel, for the defendant.

Before the court is a Motion for Judgment on the Agency Record pursuant to USCIT Rule

56.1, wherein plaintiff Michael A. Delgado challenges a decision by the Secretary of the U.S.

Department of Homeland Security[1] ("DHS" or "the Secretary") to revoke his customs broker's

license ("License"). This matter was previously before the court on May 11, 2007, at which point

---

[1] Until January 2003, revocation decisions were made by the Secretary of the Treasury. After the reorganization of the former United States Customs Service, revocation decisions are now made by the Secretary of Homeland Security. 6 U.S.C. § 203 (2004).

the court remanded the matter to DHS with instructions that a proper notification letter be provided

to Mr. Delgado.  *See Delgado v. United States*, 31 CIT __, 491 F.Supp.1252 (2007).  In response to

that remand order, the Government has issued to Mr. Delgado a revised notification letter purporting

to conform to the requirements of 19 U.S.C. § 1641 and the matter is again before the Court.  The

court has jurisdiction over this case under Section 641(e) of the Tariff Act of 1930, 19 U.S.C.

§ 1641(e)(1)[2] and 28 U.S.C. § 1581(g) (granting the Court of International Trade exclusive

jurisdiction of any civil action to review the revocation of a Customs broker's License by the

Secretary of DHS).   For the reasons set forth below, the court will again remand the matter to DHS

for further consideration consistent with this opinion.

## *I. Background*

The facts in this case were extensively summarized in *Delgado*, and need not be fully

repeated here.  Mr. Delgado received his customs brokerage license in September 1989, and opened

a customs brokerage firm known as Lancer International in 1990.  *See* Transcript of Proceedings

("Tr.") at 161.  On August 24, 2000, a federal grand jury in the Southern District of Florida indicted

Mr. Delgado on several felony charges stemming from his alleged involvement in a scheme to

introduce liquor into United States commerce without the payment of excise taxes.  *See Indictment,*

*United States v. Deepak Kumar, et al.*, Ct. No. 00-0682 (S. D. Fla., Aug. 2000), R. at 173.  The

indictment charged Mr. Delgado with a total of twenty-nine violations:  Fourteen violations of

26 U.S.C. § 5601(a)(11) ("knowingly receiv[ing] distilled spirits knowing and having reasonable

grounds to believe that any tax due on such spirits had not been paid,"); fourteen violations of

---

[2]  Citation is to the 2000 edition of the U.S. Code unless otherwise noted.

26 U.S.C. § 5601(a)(12) ("knowingly removing, other than authorized by law, distilled spirits on which the tax had not been paid, from the place of storage and from an instrument of transportation"); and one count of conspiracy to commit offenses against the United States in connection with the above violations (18 U.S.C. § 371). *Id.*

Mr. Delgado was convicted by a jury on twenty-eight of the twenty-nine counts in the indictment. *See Judgment, United States v. Miguel Delgado*, Ct. No. 00-0682, (S. Dist Fla., Sept. 6, 2001) ("*Judgment*") R. at 165. The Judgment of the U.S. District Court for the Southern District of Florida ("District Court") was issued without particularized findings or a written opinion, and the jury's verdict was conveyed by a general verdict. Hence, although the conspiracy charge contained seven allegations of "overt acts" committed in furtherance of the conspiracy, the jury did not indicate which of the alleged acts were found to have been committed, or by whom. *See Indictment*, R. at 177-79. At no point in that proceeding was Delgado or any of his alleged co-conspirators accused, indicted, or convicted of violating any law or regulation enforced by Customs. Delgado was sentenced to twenty-seven months in prison and ordered to pay restitution. *Judgment*, R. at 168–69, 171.

Delgado timely appealed the decision to the U.S. Court of Appeals for the 11th Circuit ("11th Circuit"), where he alleged, *inter alia*, that the government had not presented sufficient evidence to prove that he committed the substantive acts in the indictment or that he was part of a conspiracy.[3] *See* 11th Cir. Appellate Br. at 10-11, 2002 WL 32144608; *United States v. Delgado, et al*, 321 F.3d

---

[3] Delgado also argued that it was "factually impossible for him to commit the crimes with which he was charged." The 11th Circuit dismissed the argument as an "untenable" sufficiency of the evidence claim. *U.S. v. Delgado*, 321 F.3d 1338, 1346 (2003).

1338, 1346 (11th Cir. 2003) ("*Delgado II*").  Upon review, the 11th Circuit found that the evidence

presented, "when viewed in a light most favorable to the government," was sufficient to support the

jury's verdict and affirmed the District Court's decision.  *Id.*

After his release, Mr. Delgado was permitted to continue working in the customs field with

the knowledge and oversight of the District Court.  R. at 113.  In January 2003, Mr. Delgado filed

with the agency now known as U.S. Customs and Border Protection ( "CBP" or "Customs") his

"Customs Broker Triennial Status Report," as required by 19 C.F.R. § 111.30(d).  One of the

questions in the Triennial Status Report inquired as to whether the broker had "engaged in any

conduct that could constitute grounds for suspension or revocation under Title 111.53? [*sic*] (i.e.

convicted of a felony)."  R. at 272.  Mr. Delgado checked the "yes" response to this question, but

noted that he was appealing the decision.  *Id.*  Further, sometime during mid-2003, "concerns" were

raised with CBP in regard to Mr. Delgado's continuing active involvement in the customs field, and

an investigation ensued.  *See* R. at 240, 241.

In March 2004, CBP notified Mr. Delgado that he was being charged with several violations

of Customs regulations, any one of which constituted grounds for revocation of his Brokers License.

Specifically, the notice stated that Mr. Delgado was being charged with violating (1) 19 C.F.R. §§

111.53(c) and 111.32 (violating Customs law or regulation by filing false documentation);

(2) 19 C.F.R. § 111.53(b) (having been convicted of a felony either involving importation or

exportation of merchandise or "arising out of" customs business); and (3) 19 C.F.R. § 111.53(d)

(aiding and abetting violation of Customs law)).  *See Notice and Statement of Charges*, R. at 153–54.

After several rounds of briefing on the matter, Mr. Delgado was afforded a formal hearing before an Administrative Law Judge ("ALJ") on May 18, 2004. *See generally*, Tr., Vols. I & II. On December 17, 2004 the ALJ issued a decision recommending license revocation. *Recommended Decision* ("*Rec. Dec.*") R. at 34. This recommendation was reviewed by the Secretary, and a decision revoking Delgado's license was issued to Mr. Delgado on December 3, 2005 in the form of a formal notification letter. *See* Compl. at Ex. A ("Notification Letter").

Delgado filed a timely appeal to this court. Upon initial review of that decision, the court found that, because the Secretary's Notification Letter Decision had provided neither findings of fact nor reasoning on which the decision was based, the decision failed to meet the statutory requirements set forth in 19 U.S.C § 1641. *Delgado*, 491 F. Supp. at 1260. The court remanded the matter to DHS with instructions, *inter alia*, to issue to Mr. Delgado a new decision properly setting forth the findings of fact and reasoning used therein. *Id.*

In response to the court's remand, DHS (through Customs) issued to Mr. Delgado, and filed with the court, a revised Notification Letter on June 20, 2007. The revised Notification Letter states that "the Secretary's decision was based solely on the record," and that "the findings of fact and reasons for the decision" are set forth in two DHS action memos, copies of which are included with the letter. *Revised Notification Letter* at 1. The government asserts that the revised Notification Letter complies with the statutory notification requirements.

Before the court, the plaintiff now contends that the revised Notification Letter is "insufficient," but presents little argument to support that assertion. Instead, the plaintiff alleges several substantive errors both in the ALJ's Recommended Decision as well as in the Secretary's

revised Notification Letter. Specifically, he asserts that the Secretary's decision is contrary to law because it is based in part on "banned dicta, erroneous chronology and other wildly mistaken 'facts' as described in the [11th Circuit] Appellate opinion." Pl.'s Resp. to June 20, 2007 Revised Revocation Letter at 2. Mr. Delgado presents a similar argument as to the ALJ's decision, contending that he was wrongfully precluded from litigating relevant facts at the Administrative Hearing because the ALJ improperly applied the doctrine of collateral estoppel to dicta contained in the 11th Circuit's opinion. Mem. in Support of Pl.'s Rule 56 Mot. at 5-6. Mr. Delgado contends further that, *inter alia*, the ALJ erroneously concluded (1) that he had violated a customs statute or regulation by making false or misleading statements, and (2) he had been convicted of a felony that involved the "importation" or "exportation" of merchandise and that arose out of the "conduct of his customs business." *Id*. at 7, 9-11.

In response to the defendants arguments, the government asserts that the defendant "greatly overstates the Secretary's reliance on the appellate decision," and that the argument is predicated "on a single sentence in the 'Background' section of the Memorandum to Elaine Dezenski." Def.'s Mem. Addressing Pl.'s Resp. to June 20, 2007 Revised Revocation Letter at 2. As to Delgado's collateral estoppel arguments, the Government contends that the ALJ's application of collateral estoppel to the Appellate court's recitation of facts was not improper, and that the decision was supported by substantial evidence of record. *Id*. at 4.

## II. Discussion

A. Procedural Issues
1. Adequacy of the Revised Notification Letter

Title 28 of United States Code, sections 2640(a)(5) and (d), provide that this Court reviews

decisions by the Secretary to revoke broker licenses pursuant to the scope of review set forth in

5 U.S.C. § 706 (2000).  *See Delgado*, 491 F.Supp. at 1258; *Shiepe v. United States*, 23 CIT 66, 72,

36 F. Supp. 2d, 402, 408 (1999).  Section 706, provides, *inter alia,* that the Court "shall hold

unlawful and set aside" any agency action, findings, and conclusions found to be "unsupported by

substantial evidence," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law[.]"  5 U.S.C. §§ 706(2)(A), (E); *see Barnhart v. United States Treasury Dep't*, 9 CIT 287,

290-91, 613 F. Supp. 370, 373-74 (1985).

Further, 19 U.S.C. § 1641(d)(2)(B) provides that the Secretary, upon rendering a decision to

revoke a broker's license, must issue "a written decision, based solely on the record, setting forth the

findings of fact and the reasons for the decision." 19 U.S.C. § 1641(d)(2)(B) (2000).  The agency's

decision must be set forth so that "the rationale is both discernible and defensible[,]" *i.e.*, such that

the Court may "assure itself" that the agency's decision was "rational and based on consideration of

relevant factors."  *Barnhart*, 9 CIT at 291, 613 F. Supp. at 374.

The purpose of requiring specific findings and conclusions is not simply, as the government

asserts, to provide parties with a reasoned explanation for those decisions, but also to furnish a basis

for effective judicial review.  The Supreme Court has discussed this requirement on many occasions,

noting:

> If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.  In other words, "[w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong."

*Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947); *see also Bell v. United States,* 17 CIT 1220, 1227-28, 839 F.Supp. 874, 880 (1993).

An agency need not set forth separate findings if it specifically adopts the opinion of the ALJ. *Armstrong v. Commodity Futures Trading Com'n*, 12 F.3d 401, 403-04 (3rd Cir. 1993) (holding that "[a]n administrative agency need not provide an independent statement if it specifically adopts an ALJ's opinion that sets forth adequate findings and reasoning.").  However, "a summary affirmance of all or part of an ALJ's opinion must leave no guesswork regarding what the agency has adopted." *Id*. at 404.

In this case, the revised Notification Letter does not specifically adopt the ALJ's opinion. Instead, the letter states that the "Secretary's decision was based solely on the record," and the findings of fact and reasons for the decision are to be found in (1) A DHS Action Memo dated August 2, 2005, for Commissioner Robert C. Bonner, from Acting Assistant Secretary Elaine Dezenski ("First Memorandum"), and (2) A DHS Action Memo dated August 2, 2005, for Acting Assistant Secretary Elaine Dezenski, from Beverly Cenname ("Second Memorandum").  *Revised Notification Letter*.  Because the Secretary adopted only the findings of fact and reasoning contained in the DHS memos, the court's analysis must begin with those memos.

### a. First Memorandum

The memorandum from Acting Assistant Secretary Elaine Dezenski to Secretary Robert C.

Bonner states that

> CBP filed these charges as a result of Mr. Delgado being convicted
> on 28 felony counts involving the importation and exportation of
> liquor, arising out of the conduct of his Customs business.  CBP also
> found revocation to be appropriate based on evidence that Mr.
> Delgado knowingly violated Customs regulations, and filed false
> Customs forms.

First Mem. at 1.  The memorandum notes further that the ALJ "found that evidence in the record

supports revocation," and that "[c]onsidering all of the facts presented in the ALJ decision, and

reviewing the underlying testimony and record of subsequent good conduct, we affirm CBP's

revocation of Mr. Delgado's license." *Id*. at 1-2.

The First Memorandum provides no real explanation for the Secretary's decision.  The first

paragraph explains CBP's position and why it filed the charges, but provides no insight as to the

Secretary's findings or reasons for affirming CBP's conclusion.  Although memorandum then states

that the Secretary "considered all of the facts presented in the ALJ decision," and reviewed "the

underlying testimony and record of subsequent good conduct," the memo provides no indication as

to which of the "facts presented" the Secretary found to be dispositive or why.

### b.  Second Memorandum

In the memorandum from Beverly Cenname to Elaine Dezenski, the court is able to discern

the following findings and conclusions.  First, the memo states that the Secretary's decision "relies

on the [ALJ's] holding that a preponderance of the evidence . . . supports the CBP license revocation

as a matter of law."  Second, the Memorandum states that Mr. Delgado

> was found guilty by a federal jury on 28 felony counts that involved
> importation or exportation of liquor that arose out of the conduct of
> his Customs business.  Criminal conduct relied upon by CBP to
> revoke Mr. Delgado's license is primarily set forth in findings of the
> 11th Circuit in [*Delgado II*].

Second Mem. at 2.  Following this statement, the memorandum then provides a factual synopsis of

findings that is essentially a quote from the decision of the 11th Circuit.  *See id., Delgado II*, 321

F.3d at 1340.  Finally, the memorandum states that

> the ALJ found the evidence to show that Mr. Delgado prepared
> documents and Customs forms in connection with importation and
> exportation of liquor, exportation of which never occurred.  While
> Mr. Delgado was convicted of a criminal alcohol diversion scheme,
> and not for any specific violation of Customs laws or regulations, the
> scheme would not have worked without the services of a Customs
> broker.

Second Mem. at 2-3.  In summary, the memo indicates that the decision to revoke Delgado's license

(1) "relied" on the ALJ's holding, as well as the ALJ's finding that Mr. Delgado "prepared

documents in connection with importation and exportation of liquor, exportation of which never

occurred"; (2) concluded that the alcohol diversion scheme would not have worked without the

services of a Customs broker; and (3) found that, based on criminal conduct set forth in the 11th

Circuit's opinion, Mr. Delgado's crimes involved importation or exportation of liquor that arose out

of the conduct of his Customs business.

        To the extent that the Secretary based the decision on the "facts" set forth in the 11th Circuit

opinion or on the ALJ's determination of facts based on the 11th Circuit opinion, the court cannot

affirm the Secretary's decision for the reasons set forth in Section 2, below.  As to the somewhat

cryptic statement that the Secretary's decision "relies on the ALJ's holding," that statement seems

to indicate that the Secretary did not adopt the entirety of the ALJ's decision or the reasoning

contained therein, although the exact meaning of such "reliance" is not clear.  In any event, the

memorandum falls considerably short of the requirement that the decision "leave no guesswork" as

to the Secretary's reasoning or the extent to which the ALJ's reasoning was adopted.  Without further

explanation, the court is unable to conclude that the findings and conclusions contained in either (or

both) memorandum provide a "discernable and defensible" rationale for the Secretary's decision.

### 2. Collateral Estoppel

Although a remand is warranted based on the adoption/inadequate reasoning issue alone, the

court will proceed to review the ALJ's decision in order to prevent an immediate return of the matter

to this court.  In this case, the Recommended Decision purports to apply the doctrine of collateral

estoppel (also known as "issue preclusion") to the issues discussed in several passages from the 11th

Circuit's opinion in *Delgado II*.  For the reasons set forth below, the court finds that the ALJ's use

of collateral estoppel was not in accordance with law.

Courts have uniformly approved of the use of collateral estoppel in agency decisions but

warn that an agency's use of the doctrine "must follow procedures similar to those established for

its use in judicial proceedings."  *Chisholm v. Defense Logistics Agency*, 656 F.2d 42, 50 (3d Cir.

1981).  Briefly stated, four conditions must be satisfied before a party can use collateral estoppel to

prevent an opponent from relitigating an issue or fact that has already been decided in a prior

litigation:  (1) the issue or fact is "identical to one decided in the first action," (2) the issue or fact

was "actually litigated in the first action," (3) resolution of the issue or fact was "essential to a final judgment in the first action," and (4) the plaintiff had a "full and fair opportunity to litigate the particular issue" or fact in the first action. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702 (Fed. Cir. 1983); *see also Montana v. United States*, 440 U.S. 165 (1979).

"Accordingly, the first step in resolving a claim of collateral estoppel is to determine which facts were necessarily decided in the first trial." *United States v. Brackett,* 113 F.3d 1396, 1398 (5th Cir. 1997) (citation and internal quotes omitted); *A.B. Dick*, 713 F.2d at 700. However, when a jury issues a general verdict with no findings of fact, the task of determining what matters were actually adjudicated in the antecedent case may be quite difficult. A general verdict "does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy[;] . . . since all of the acts charged need not be proved for conviction, such a verdict does not establish that defendants used all of the means charged or any particular one." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569 (1951) (internal citation omitted).

Under these conditions, "what was decided by the criminal judgment must be determined by the trial judge in the [antecedent] suit, upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts." *Id.*

In this case, the Recommended Decision purports to apply the doctrine of collateral estoppel to several different "facts" related to Delgado's criminal conviction, which was conveyed by a general verdict. However, in doing so, the ALJ did not consult the pleadings, record, or jury instructions associated with the District Court trial in order to determine what matters were actually

adjudicated. *See Rec. Dec.* ¶ 9, R. at 20.   Instead, the prior action from which the "facts" were taken

is the 11th Circuit's appellate opinion in *Delgado II*:  Paragraph 10 of the Recommended Decision

contains sections entitled "Synopsis of Scheme" and "Collateral Estoppel Facts," which quote large

blocks of text from the 11th Circuit's opinion, stating (in relevant part) that:

### Synopsis of Scheme

[t]he Government's evidence showed that Kumar ordered 15 shipments of liquor in Missouri and directed it be sent to Delgado's bonded warehouse in Miami.  Delgado then shipped the liquor to Honduras, but it only remained there until he could bring it back to his Miami warehouse.  Once the liquor arrived in Miami, Delgado prepared paperwork indicating that it was re-exported to South America.  In most instances, a shipping company owned by Jose Bermudez [fn. omitted] was the designated shipper.  Bermudez, however, did not ship the liquor to South America.  Instead, his non-bonded trucking company delivered the liquor to transport companies owned by unindicted co-conspirator William Coleman.  Coleman's companies transported the alcohol by rail to Buffalo.

### Collateral Estoppel Facts

Fifteen[4] shipments were purchased by Kumar's Isle Trading Company, and shipped to Delgado's care at either Sula or H.C.S. in Honduras. Delgado then "sold" the liquor back to Kumar and re-shipped it to Miami for Kumar. A bonded trucking company transferred the liquor from the ship to Delgado's bonded warehouse. It was kept at Delgado's bonded warehouse and designated for export to Venezuela or Guatemala. Except for one occasion, none of the liquor was actually shipped to either of those countries. If this was a record-keeping error, a still more serious irregularity became apparent when the Government discovered that liquor shipments 1-6 (whose bills of lading had been prepared by Delgado's company) falsely described the shipments as "foodstuffs" even though other shipping

---

4  The original opinion is preceded as follows: "Based on Inspector Schieferdecker's review of the bills of lading for the 15 shipments, he was able to determine the path each shipment took. The [fifteen] shipments were purchased by Kumar's . . ."  321 F.3d at 1341.

and warehouse records reported that the shipments contained 1,700-plus cartons of whiskey, vodka, and rum.

For shipments 7-14, Kumar arranged for Delgado to transport liquor back from Honduras to Miami. A Customs Form 7512 was filed for each of the shipments, accurately identifying the contents as liquor. Nevertheless, Customs agents became suspicious of these shipments because they were brought back to Miami so soon after they were shipped to Honduras. Upon investigation, the Customs Department discovered that shipment number 10's bill of lading was like shipments 1-6, falsely identified as "foodstuffs."

*Rec. Dec.* at ¶ 10, R. at 21 (quoting *Delgado II*, 321 F.3d at 1340-41). In the following paragraph,

the ALJ stated that "[t]he findings by the Court of Appeals will not be disturbed or collaterally

attacked." *Rec. Dec*. ¶ 11, R. at 22. Additionally, paragraph 46 states that

[t]he Court of Appeals considered Mr. Delgado's conviction *de novo*,[5] and concluded that the evidence supports the following:

Delgado jockeyed Kumar's liquor from port to port, knowingly misidentified shipments as foodstuffs, filed export forms even though he knew the liquor was never really going to be exported, and held the liquor in his warehouse until it could be diverted into commerce.

*Rec. Dec*. ¶ 46, R. at 30. Finally, paragraph 59 of the Recommended Decision states:

[T]here is a question of knowledge of the falsity of documents. Mr. Delgado claims that he was unaware of the falsity of the documents while conducting his Customs business. He also made the same argument to the Court of Appeals and it was rejected.[6] The Court of Appeals held:

---

[5] The ALJ's abbreviated characterization of the 11th Circuit's standard of review as simply "*de novo*" is somewhat misleading. More accurately described, "[t]he Court of Appeals uses a *de novo* standard of review when deciding whether there is sufficient evidence to support a jury's verdict." *Delgado II*, 321 F.3d at 1344.

[6] In reviewing the 11th Circuit's opinion, as well as Delgado's appellate brief, the court is unable to find any indication that Delgado made this argument to the Court of Appeals.

> [T]he Government proved that [Respondent] . . . knowingly misidentified shipments as "foodstuffs," filed export forms even though he knew the liquor was never really going to be exported . . . .]

> Technically, Mr. Delgado should be collaterally estopped from even arguing in this hearing that he did not knowingly file false documents with the Agency.

*Rec. Dec.* ¶ 59, R. at 34 (citations omitted).

On the face of the decision, the court must conclude that the ALJ's use of collateral estoppel was not in accordance with law, for two related reasons. First, it must be recalled that the issue actually decided by the 11th Circuit was whether the evidence presented, when "viewed in a light most favorable to the government," was sufficient to support the jury's verdict.[7] *Delgado II*, 321 F.3d at 1344. Hence, any "findings" discussed by the 11th Circuit as to whether or not the government had *proved each factual allegation* contained in each count charged in the indictment were *not essential* to the 11th Circuit's ultimate holding and cannot be given collateral estoppel effect. *See A.B. Dick*, 713 F.2d at 702. A reviewing court "cannot examine the underlying testimony and draw from it factual inferences that were not made by the district court." *United States v. Township of Brighton*, 153 F.3d 307, 332 (6th Cir. 1998) (Dowd, J., dissenting); *Pullman-Standard v. Swint*, 456 U.S. 273, 291-92 (1982) (holding that "factfinding is the basic responsibility of district

---

[7] The 11th Circuit has explained the standard of review for evaluating a sufficiency of the evidence claim on several occasions, noting that, when evaluating such a claim, "we must view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict." *United States v. Church,* 955 F.2d 688, 693 (11th Cir. 1992), *cert. denied,* 506 U.S. 881 (1992). Moreover, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *United States v. Hernandez,* 896 F.2d 513, 517 (11th Cir. 1990) (citation and quotation marks omitted), *cert. denied,* 498 U.S. 858 (1990).

courts, rather than appellate courts, and . . . the Court of Appeals should not have resolved in the first

instance this factual dispute which had not been considered by the District Court." (internal quotes

and citation omitted)); *Matter of Cassidy*, 892 F.2d 637, 640 (7th Cir. 1990)  (holding that "[t]he

Court of Appeals exists to review judgments, and consideration of issues outside the scope of the

judgment below must necessarily be dicta.").  To deem the prefatory summary of facts laid out by

the 11th Circuit as "findings" ignores the fundamental principle that a court of appeals may not make

findings of fact.  *Pullman Standard*, 456 U.S. at 291-92.  Although the language of the 11th Circuit

opinion is admittedly couched in the language of factfinding, the prohibition on appellate factfinding

dictates that such statements must be seen only as a summation of the evidence presented (viewed

in a light most favorable to the government), and nothing more.

Second, although a trial judge does indeed have "broad discretion" to decide whether or not

offensive collateral estoppel may be applied, that discretion does not include the option to bypass

the fundamental determination as to whether collateral estoppel may be applied in the first place.

In this case, it appears that the ALJ's analysis focused only on the "broad discretion" afforded trial

court judges discussed in *Parklane Hosiery v. Shore*, 439 U.S. 322 (1979) (holding that because use

of offensive collateral estoppel carried great potential for unfairness, trial judges should consider

additional questions of fairness before allowing its use).  *Rec. Dec.* at n. 4, R. at 19.  Although the

ALJ considered the fairness issues addressed in *Parklane*, nowhere does the record indicate that the

ALJ considered whether the four basic conditions required for the use of collateral estoppel were

present, such as whether the facts were "actually litigated in the first action," or whether resolution

of the issue or fact was "essential to a final judgment" in that action.[8]  *A.B. Dick*, 713 F.2d at 700.

Accordingly, the court finds that the ALJ's application of collateral estoppel was not in accordance

with law.

3. Collateral Estoppel - Prejudicial Error

The Administrative Procedure Act requires that upon judicial review of an agency decision,

"due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706; *see Intercargo Ins. Co.

v. United States,* 83 F.3d 391, 394 (Fed. Cir. 1996) (holding that "[i]t is well settled that principles

of harmless error apply to the review of agency proceedings."); *Parkdale Intern., Ltd. v. United

States*, 31 CIT __, 508 F.Supp.2d 1338 (2007).  In this case, the court finds that, although the ALJ's

use of collateral estoppel was in error, the evidence of record indicates that, except for the matter

discussed in Part B.3, below, that error was nonprejudicial.

The plaintiff argues that the "Synopsis of Scheme" and "Collateral Estoppel Facts" contain

patent inaccuracies, specifically regarding Delgado's involvement in the shipment of the liquor to

Honduras.  The plaintiff contends that "[a] customs officer testified that Delgado had nothing to do

with the shipping to Honduras of the U.S. liquor that wound up, months later, in Lancer's

warehouse."  This allegation may well be correct; however, nothing in the ALJ's decision indicates

---

[8] The "broad discretion" discussed in *Parklane* referred only to the *additional* considerations that should be afforded to defendants when the courts consider allowing the use of offensive collateral estoppel.  That is, the factors discussed in *Parklane* are additional questions that a trial judge should ask even after it has been established that collateral estoppel *may* be applied pursuant to the four factors described in *A.B. Dick.  See Parklane*, 439 U.S. at 331 (holding that "in cases where a plaintiff could have easily joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.")

that the issue of whether Delgado was involved in shipping the liquor to Honduras was in any way

relevant to his determination of license revocation.

Furthermore, Mr. Delgado was not "estopped" from presenting evidence on that issue. The

hearing transcript contains testimony as to Mr. Delgado's lack of involvement in the shipment to

Honduras, as well as several pages of testimony as to alleged inaccuracies on the bills of lading. *See*

Tr. at 161-173. Moreover, although the ALJ's decision appears to state that collateral estoppel

would apply to the "facts" noted in paragraphs 46 and 59 (concerning Delgado's knowledge as to

the falsity of documents), again, it appears that the ALJ permitted Mr. Delgado to present evidence

on those issues. The ALJ 's statement that "Mr. Delgado should be collaterally estopped from even

arguing . . . that he did not knowingly file false documents," belies the fact that the ALJ did allow,

and did consider, testimony on the issue of whether Mr. Delgado knew that the documents were

false. *See* Tr. at 130. Indeed, the ALJ noted that

> The Presiding Judge has discretion to consider and weigh relevant
> testimony. The record shows that the "foodstuffs" misdesignation
> occurred only as to one shipment, the mistake was made by a low-level
> Lancer employee, and the mistake was corrected. Direct evidence is
> lacking of Mr. Delgado himself preparing and filing false forms.

*Rec. Dec*. ¶ 59, R. at 34. Accordingly, as to these issues, the court finds that the ALJ's erroneous

application of collateral estoppel was either nonprejudicial or remedied by the ALJ's subsequent

consideration of evidence.

## B. Merits

Custom's charged Mr. Delgado with violations of 19 C.F.R. §§ 111.53(b), 111.53(c), and

111.53(d). Regulation 111.53 provides, in pertinent part:

§ 111.53 Grounds for suspension or revocation of license or permit.

The appropriate Customs officer may initiate proceedings for the suspension, for a specific period of time, or revocation of the license or permit of any broker for any of the following reasons:

(a) The broker has made or caused to be made in any application for any license or permit under this part, or report filed with Customs, any statement which was, at the time and in light of the circumstances under which it was made, false or misleading with respect to any material fact, or has omitted to state in any application or report any material fact which was required;

(b) The broker has been convicted, at any time after the filing of an application for a license under § 111.12, of any felony or misdemeanor which:

(1) Involved the importation or exportation of merchandise;

(2) Arose out of the conduct of customs business; or

(3) Involved larceny, theft, robbery, extortion, forgery, counterfeiting, fraudulent concealment, embezzlement, fraudulent conversion, or misappropriation of funds;

(c) The broker has violated any provision of any law enforced by Customs or the rules or regulations issued under any provision of any law enforced by Customs;

(d) The broker has counseled, commanded, induced, procured, or knowingly aided or abetted the violations by any other person of any provision of any law enforced by Customs or the rules or regulations issued under any provision of any law enforced by Customs[.]

\* \* \*

19 C.F.R. § 111.53 (2007).  In this case, the ALJ found that revocation was proper because substantial evidence of record showed that the felony for which Delgado had been convicted "involved the importation or exportation of merchandise" and "arose out of the conduct of his customs business."  Further, the ALJ also found that revocation was proper because substantial evidence of record supported a finding that Delgado had violated a law or regulation enforced by Customs by filing documents that he knew to be false.  The court will discuss these findings in turn.

### 1. Violation of 19 C.F.R. § 111.53(b)(1)

Delgado argues that the ALJ's determination that he was in violation of 19 C.F.R. § 111.53(b)(1) is in error because "[n]either 'importation' nor 'exportation' was an element of the crimes for which he was convicted." Mem. in Support of Pl.'s Rule 56 Mot. at 9. Delgado further argues that "[a]s a matter of law, the goods were neither exported nor imported . . . ." *Id.* at 11.

The court finds these arguments to be without merit. First, as Customs points out, the regulation does not require that the elements of the underlying felony or misdemeanor include the importation or exportation of merchandise: the regulation simply requires that the felony or misdemeanor "involve" the importation or exportation of merchandise. *See* Mem. in Support of Def.'s Resp. at 14-15; 19 C.F.R. § 111.53(b). Pursuant to the language of the governing statute, the determination as to what "involved the importation or exportation of merchandise" rests with the agency. *See* 19 U.S.C. § 1641(d)(1)(B) (providing that action may be taken when broker has been convicted of a felony "*which the Secretary finds* . . . involved the importation and exportation of merchandise.") (emphasis added).

As to Delgado's second argument, although it may be true that—technically speaking—the liquor itself was not imported or exported,[9] substantial evidence of record supports a finding that the tax avoidance scheme "involved" the importation and exportation of liquor. Testimony at the Administrative Hearing by Senior Inspector Cox and Special Agent O' Keefe indicated that the liquor was moved from place to place using the means and instrumentalities of importation and

---

[9] *See, e.g.*, 19 C.F.R. § 101.1 (defining the word "exportation"); *Swan & Finch v. United States*, 190 U.S. 143, 145 (1902) (citing 17 Op. Attys Gen. 535) (definition of "exportation"); *United States v. Nat'l Sugar Refining Co.*, 39 CCPA 96, 100 (1951) (citing *Swan*, 190 U.S. at 145).

exportation, some of which were under Delgado's direct control.  Further, the testimony of both

agents also indicated that the alcohol diversion scheme was facilitated by the appearance that the

liquor would be exported because of documents prepared by Delgado. Tr. at 146, 285.  Accordingly,

the court finds that the ALJ's determination in this regard is supported by substantial evidence of

record.

### 2. Violation of 19 C.F.R. § 111.53(b)(2)

The ALJ also found that Customs decision was proper because the felony for which Delgado

had been convicted "arose" out of the conduct of customs business.  *See* Rec. Dec. ¶¶ 53-54,  R. at

32.  Pursuant to 19 C.F.R. § 111.1, "Customs business" is defined (in relevant part) as

> those activities involving transactions with Customs concerning the
> entry and admissibility of merchandise, its classification and
> valuation, the payment of duties, taxes, or other charges assessed or
> collected by Customs on merchandise by reason of its importation,
> and the refund, rebate, or drawback of those duties, taxes, or other
> charges. "Customs business" also includes the preparation, and
> activities relating to the preparation, of documents in any format and
> the electronic transmission of documents and parts of documents
> intended to be filed with Customs in furtherance of any other customs
> business activity, whether or not signed or filed by the preparer.

19 C.F.R. § 111.1 (2007).

The court finds that the ALJ's determination is supported by substantial evidence of record.

Customs agent Joseph Cox and ATF agent Kevin O'Keefe, who were involved in the original

investigation and had testified at the jury trial, testified at the Administrative Hearing (with no

reliance on the appellate opinion) that Delgado's customs business was used in the alcohol diversion

scheme.  Agent O'Keefe testified that although Delgado may not have been directly involved, his

customs operation was "the pivot, the turning point, of the alcohol from outside the country back in

to continue the scheme." Tr. at 270. Agent Cox testified that Mr. Delgado was designated as the "contact person" for shipments to Honduras; that Lancer had prepared bills of lading for those shipments, several of which indicated "foodstuffs" instead of liquor; that after the liquor arrived back in the United States the liquor was moved to "Lancer's container freight station" and that two of the shipments were then moved to Lancer's bonded warehouse at Miami; that Lancer prepared Customs form 7512 for the export of the shipments and arranged for a portion of the transportation, but that the shipments were never exported. Tr. at 118-32.

Delgado argues, *inter alia*, that even if it were determined that the felony arose out of conduct of customs business, the ALJ's decision would still be in error– because it was not he, but Lancer USA, that "undertook all customs business." Mem. in Support of Pl.'s Rule 56 Mot. at 11. Mr. Delgado alleges that Lancer "had its own distinct Customs broker's license and almost twenty employees utilizing it," and argues that "[w]hether, in 2001 or before, he could have been accused of improper supervision and control is now moot." *Id*. Delgado points out that "Lancer was never accused by Customs of any wrongdoing," and that "even if Lancer had been accused, it would be improper to impute the conduct of a corporation to an employee without some evidence of knowledge on the latter's part." *Id.*

The court is unable to agree with Mr. Delgado's arguments. Although Delgado describes himself as a mere "employee" of Lancer, his own testimony indicates that he was the owner and president of Lancer USA, and 50% owner of Lancer Honduras. As the owner of the customs business, Delgado was responsible for the "responsible supervision and control" of his business during the period of the conspiracy. *See* 19 U.S.C. § 1641(b)(4); 19 C.F.R. § 111.1; *see also Shiepe*

*v. United States*, 23 CIT 66, 36 F.Supp.2d. (1999). Mr. Delgado does not explain how the issue of "reasonable supervision" is "now moot."

Moreover, Mr. Delgado appears to forget that it was he, not Lancer, that was convicted of the felony in question. Whether Mr. Delgado was acting under Lancer's Customs brokerage license or his own license when he committed the felonies in question would not appear to be relevant to the ALJ's determination; the relevant question is only whether any of those felonies "arose out of the conduct of customs business."

### 3. Violation of 19 C.F.R. § 111.53(c)

Finally, the ALJ determined that license revocation was proper because evidence of record showed that Delgado had filed with Customs documents that he knew to be false. Pursuant to regulation 111.53(c), a broker's license may be revoked if it is shown that the broker "violated any provision of any law enforced by Customs or the rules or regulations issued under any provision of law enforced by Customs." 19 C.F.R. § 111.53(c). In this case, the regulation that Mr. Delgado is alleged to have violated is 19 C.F.R. § 111.32, which states

§ 111.32 False information.

> A broker must not file or procure or assist in the filing of any claim, or of any document, affidavit, or other papers, known by such broker to be false. In addition, a broker must not knowingly give, or solicit or procure the giving of, any false or misleading information or testimony in any matter pending before the [Department of Homeland Security] or any representative of the [Department of Homeland Security.]

19 C.F.R. § 111.32 (2007).

The court cannot agree that substantial evidence of record supports the ALJ's determination that Mr. Delgado filed, or caused to be filed, documents that he knew to be false. Mr. Delgado

testified that a single Customs Form 7512 had mistakenly labeled the shipments as "foodstuffs" as opposed to liquor, and that the mistake was corrected.  Although evidence also shows that Delgado filed other 7512 forms designating the liquor for export, no evidence was offered to show that Mr. Delgado knew that the liquor would never be exported.  *In toto*, there appears to be little evidence beyond mere suspicion that Delgado actually knew that any document involved in this matter contained incorrect or false information.

As support for his finding that the record contained "evidence that Mr. Delgado prepared and filed documents known to be false, or that employees of Lancer prepared and filed," the ALJ cited to certain "findings" contained in the 11th Circuit's opinion and to several passages in the hearing transcript.  However, in reviewing the appellate opinion, the court notes that the only "finding" regarding Delgado's knowledge of false documents is not a reference to evidence, but a statement by the 11th Circuit that Delgado "knowingly misidentified shipments as 'foodstuffs,' [and] filed export forms even though he knew the liquor was never really going to be exported."  *Delgado II*, 321 F.3d at 1346.  Although a summary of evidence in the 11th Circuit's opinion could properly be weighed against other evidence of record, the quoted statement is not a summary of evidence presented but a conclusion drawn from such evidence that must be seen only as dictum.  *See Pullman Standard*, 456 U.S. at 291-92 (holding that appellate court "should not have resolved in the first instance this factual dispute which had not been considered by the District Court.").

Further, most of the supporting testimony to which the ALJ refers was made by individuals stating that their knowledge of the facts was not based on direct experience, but on information learned from having read the 11th Circuit's opinion.  *See* Tr. at 92-93, 119.  Only the testimony of

Agent Kevin O'Keefe reflects first hand knowledge independent of the 11th Circuit opinion.  Agent O'Keefe testified that at least six bills of lading had been "incorrectly" labeled as foodstuffs "then changed back to alcoholic beverages when it was under the care of Mr. Delgado's company."  Tr. at 254.  Although this statement may be accurate, as evidence it is problematic for at least two reasons.  First, Mr. Delgado has not been charged with "falsity" as to a bill of lading, and it appears unlikely that a bill of lading qualifies as a "filed" document pursuant to regulation 111.32.  Second, although O'Keefe's statements indicate that Delgado corrected the bills of lading, they do not indicate who drafted the bills of lading or whether that drafting was intentionally (or actually) incorrect.

Finally, the court is unable to reconcile the ALJ's conclusion with his other findings regarding the extent of Mr. Delgado's knowledge of the scheme generally.  *Rec. Dec.* ¶ 63, R. at 35.  In paragraph 59 the ALJ states that

> The record shows that the "foodstuffs" misdesignation occurred only as to one shipment, the mistake was made by a low-level Lancer employee, and that the mistake was corrected.  Direct evidence is lacking of Mr. Delgado himself preparing and filing false forms.

Rec. Dec. ¶ 59, R. at 34.  The ALJ also found that "there is not substantial evidence showing that Mr. Delgado actually knew that he was being used in a tax avoidance scheme, or that he actually knew that liquor . . . was destined for 'organized crime' in Canada."  *Rec. Dec.* ¶ 48, R. at 31.  In light of all these factors, the court must conclude that ALJ's finding that Delgado violated 19 C.F.R. § 111.32 is not supported by substantial evidence of record and cannot be sustained.

### III. Conclusion

Because the Secretary's decision to revoke Mr. Delgado's license did not contain adequate findings of fact or reasoning upon which the decision was based, and failed to specify what parts of the ALJ's opinion were being adopted, the court must remand the matter to DHS for reconsideration. Further, because, after our review, "the record" is no longer the same as that on which the Secretary based the decision, it is necessary for the court to remand the matter to the Secretary for reconsideration given the charges that remain after our review. *See Boynton v. United States*, Slip. Op. 07- 146 (Oct. 2, 2007). On remand, Customs will, consistent with this opinion, issue to Mr. Delgado, and file with the Court, a decision properly setting forth specific findings of fact and the reasoning upon which the decision is based.

Remand results are ordered by January 11, 2008. Plaintiff may file any objections to the remand results by January 25, 2008. The government's reply, if any, must be filed by February 8, 2008. All filings shall not exceed five pages in length.

**SO ORDERED**

_____
          /S/   R. Kenton Musgrave
     R. KENTON MUSGRAVE, SENIOR JUDGE

Dated: December 11, 2007
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                                                        Deputy Clerk